UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD T. PROULX,
        Plaintiff,

v.                                                                            C.A. No. 14-00450-ML

BROOKDALE LIVING COMMUNITIES
INC., BROOKDALE SENIOR LIVING, INC.,
SENIOR LIFESTYLE SAKONNET BAY
LIMITED PARTNERSHIP, d/b/a/ SLC
SAKONNET BAY LIMITED PARTNERSHIP
and SAKONNET BAY RETIREMENT LIVING,
        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Richard T. Proulx ("Plaintiff") instituted this action alleging violations of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 et seq. ("RICRA"), the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 et seq. ("FEPA"), and the Civil Rights of People with Disabilities Act, R.I. Gen. Laws § 42-87-1 et seq. ("CRPDA"). Plaintiff claims that Defendants discriminated against him when they terminated his employment based on his disability. The matter is before the Court on Defendants' motion to dismiss Plaintiff's amended complaint and compel arbitration, or, in the alternative, to stay the matter and compel arbitration.

**I. Standard of Review[1]**

While the First Circuit has not yet addressed the issue, other courts have applied a summary judgment standard to a motion to compel arbitration. Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 & n. 9 (3d Cir. 1980); Cogent Computer Systems,

---

[1] Neither party has addressed the appropriate standard of review.

1

Inc. v. Turbochef Technologies, Inc., C.A. No. 06–280-S, 2008 WL 219343 (D.R.I. Jan. 24, 2008); Boulet v. Bangor Securities, Inc., 324 F. Supp. 2d 120 (D. Me. May 26, 2004). Accordingly, this Court will consider Defendants' motion under that familiar standard.

## II. **Background**

Plaintiff, a Massachusetts resident, was employed by Sakonnet Bay Tiverton, a continuing care retirement community located in Rhode Island. Sakonnet Bay Tiverton is owned and operated by Defendants. On or about October 13, 2011, Plaintiff executed an "[e]mployment [b]inding [a]rbitration [a]greement" ("Agreement") as a condition of employment. Declaration of Lynn Dombroski ¶ 7; Exhibit A; Docket #5. Plaintiff agreed that

> 1. [a]s a condition of your employment . . . <u>you agree that any controversy or claim arising out of or relating to your employment relationship with us or the termination of that relationship, must be submitted for final and binding resolution by a private and impartial arbitrator</u>, to be jointly selected by you and us.
>
>     a. Claims Covered: This agreement to submit to mediation and (if necessary) arbitration:
> . . .
>     ii. Includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which you have an alleged cause of action, including without limitation . . . <u>claims for discrimination</u> (including but not limited to discrimination based on . . . <u>mental or physical disability, or medical condition</u> . . . ); <u>claims for wrongful discharge</u> . . . and/or claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance, and whether based on statute or common law . . . .

Exhibit A at ¶ 1 (emphasis added). The Agreement further provided:

> b. Claims Not Covered: Claims covered by this Agreement do not include:
>     . . . .
>     iv. A claim before the Equal Employment Opportunity Commission (or agency with concurrent jurisdiction);
>
>     v. A claim by you or us for injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information, for which we may seek and

2

obtain relief from a court of competent jurisdiction . . . .

Id.

On June 13, 2012, Plaintiff filed a claim with the Rhode Island Commission for Human Rights ("Commission") alleging that Defendants wrongfully terminated his employment based on his disability. On June 12, 2014, the Commission issued Plaintiff a right to sue letter. Plaintiff then filed suit in the Rhode Island Superior Court. Defendants subsequently removed the matter to this Court.

Defendants argue that the Court should dismiss the amended complaint because Plaintiff's claims fall within the scope of the valid and enforceable Agreement. While Plaintiff agrees that the Federal Arbitration Act applies, he contends that his claims do not fall within the scope of the Agreement. Plaintiff argues that Defendants' motion should be denied because the Agreement (1) does not expressly address claims brought pursuant to RICRA, FEPA, and CRPDA; (2) excludes claims brought before the Commission; and, (3) excludes claims for equitable relief.

### III.  Analysis

The Federal Arbitration Act ("FAA") provides in pertinent part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract . . . or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Pursuant to Section 3 of the FAA, a party can request a court to stay a judicial proceeding "when the matter before the court involves an issue governed by an agreement to arbitrate." Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546, 552 (1st

Cir. 2005); 9 U.S.C. § 3. Under Section 4 of the FAA, if one party to a suit refuses to arbitrate, the other party can "petition a district court to compel arbitration in accordance with the parties' preexisting agreement." Id.; 9 U.S.C. § 4.

The FAA has established a strong policy in favor of arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (noting that Congress's intent "in passing the [FAA] was to enforce private agreements into which parties had entered," which requires courts to "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute"). Accordingly, if there is any doubt whether a matter is arbitrable or not, federal policy requires that such doubt is resolved in favor of arbitration. McCarthy v. Azure, 22 F.3d 351 (1st Cir. 1994). "[I]f the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a healthy regard for the federal policy favoring arbitration requires that any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration." Id. at 355. (internal quotation marks and citation omitted).

To compel arbitration under the Agreement, Defendants "must demonstrate that a valid agreement to arbitrate exists, that [Defendants are] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (internal quotation marks omitted). If an agreement to arbitrate is valid under the FAA, it "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Vitone v. Met. Life Ins. Co., 943 F. Supp. 192, 195 (D.R.I. 1996) (internal quotation marks omitted) (emphasis in original). A court may dismiss a

case where all the issues before it are arbitrable. Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998). The principles of state contract law govern whether a valid arbitration agreement exists. Gove v. Career Sys. Development Corp., 689 F.3d 1 (1st Cir. 2012).

### A. The Agreement Does Not Expressly Refer to RICRA, FEPA, or CRPDA

Plaintiff, relying on Weeks v. 735 Putnam Pike Operations, LLC, 85 A.3d 1147 (R.I. 2014), argues that his claims are not subject to arbitration because the Agreement does not refer to RICRA, FEPA, or CRPDA. While Plaintiff acknowledges that the Agreement refers to general claims for discrimination, including discrimination based on mental or physical disability, Plaintiff contends that because the Agreement does not expressly refer to RICRA, REPA, or CRPDA, he has not made a clear and unmistakable waiver of his right to a judicial forum.

In Weeks, the plaintiff appealed from an order of the Rhode Island Superior Court staying an action for employment discrimination and ordering that the matter be resolved through binding arbitration as required by a collective bargaining agreement. Id. at 1149. Weeks addressed the specific question of "[w]hat language must be present in a [collective bargaining agreement] to constitute a waiver by an employee of the right to raise employment discrimination claims under Rhode Island law (specifically the RICRA and the FEPA) in a judicial forum?" Id. at 1154. The Weeks court held that "the right to a judicial forum for claims brought specifically under . . . RICRA or . . . FEPA can be waived in a collective bargaining agreement if, and only if, that waiver is clear and unmistakable." Id. at 1158 (emphasis added). Weeks concluded that because the collective bargaining agreement did not contain any reference to RICRA or FEPA, it did not constitute a clear and unmistakable waiver of the plaintiff's right

5

to a judicial forum.  Id. at 1159-1160.

Weeks is readily distinguishable.  Weeks involved an arbitration agreement in a collective bargaining agreement.  Plaintiff executed the Agreement on an individual basis, thus, the "clear and unmistakable" standard applicable in collective bargaining cases is not applicable to this case.  See Skrynnikov v. Federal National Mortgage Association, 943 F. Supp. 2d 172 (D.D.C. 2013); see also Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80-81 (1998) (distinguishing a union's waiver of the rights of represented employees from an individual's waiver of his or her own rights – and noting that the clear and unmistakable standard did not apply to the individual's waiver); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, 170 F.3d 1 (1st Cir. 1999) (there is a distinction between a private arbitration agreement and an agreement in a CBA; a lesser standard than clear and unmistakable applies to private agreements); Carson v. Giant Food, Inc., 175 F.3d 325, 331 (4th Cir. 1999) (collective bargaining agreements to arbitrate claims "unlike contracts executed by individuals, must be 'clear and unmistakable'") (quoting Wright, 525 U.S. at 80).

When contract language is clear and unambiguous, a court should interpret the parties' intent based on the written words of the contract and give unambiguous words their plain and natural meaning.  In re Newport Plaza Assocs.L.P., 985 F.2d 640 (1st Cir. 1993) (applying Rhode Island law).  When no ambiguity exists, "judicial construction is at an end for the terms will be applied as written."  Monahan v. Girouard, 911 A.2d 666, 672 (R.I. 2006) (internal quotation marks omitted).  When, however, a contract is ambiguous, it will be strictly construed against the drafter.  Sentry Insurance Co. v. Grenga, 556 A.2d 998 (R.I. 1989).  Contract language is ambiguous if it is reasonably susceptible of different constructions.  In re Newport

6

Plaza, 985 F.2d at 645.[2]

"A party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim." Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1221 (11th Cir. 2000). A party who signs a written contract is presumed to have read and understood its terms. Ricci Drain-Laying Co., Inc. v. Baskin, 744 A.2d 406 (R.I. 1999). Plaintiff signed the Agreement and by "providing [his] signature" Plaintiff "indicate[d] [his] agreement to the terms" set forth in the Agreement. Exhibit A at 5. The language of the Agreement is clear and unambiguous. Plaintiff agreed to submit to arbitration (with certain exceptions not pertinent here) "any claim arising out of or relating to" his employment, including but not limited to, discrimination claims based on "mental or physical disability" or "medical condition" and claims for wrongful discharge. Exhibit A at ¶ 1. Further, the Agreement clearly and unambiguously states that it applies to any claim "for violation of any . . . state . . . statute." Id. Pursuant to the clear and unambiguous language of the Agreement, Plaintiff's RICRA, FEPA, and CRDPA claims are subject to arbitration.

B. The Agreement Excludes Claims Brought Before the Commission

Plaintiff also contends that his claims are not subject to arbitration because the Agreement specifically excludes "[a] claim before the Equal Employment Opportunity Commission (or agency with concurrent jurisdiction)." Exhibit A ¶ 1. Plaintiff argues that a reasonable interpretation of the Agreement is that claims brought before the Commission are not subject to arbitration. Alternatively, Plaintiff contends that another plausible interpretation of the Agreement is that he can pursue administrative remedies with the Commission but upon

---

[2] The Court applies the general state law principles of contract interpretation but with due regard to the policy favoring arbitration. See generally PainWebber Inc. v. Elahi, 87 F.3d 589 (1st Cir. 1996).

exhaustion of those remedies he must submit his claim to arbitration. This argument is a non-starter.

Once again, the language of the Agreement is clear and unambiguous; it excludes claims brought before an agency that has concurrent jurisdiction with the Equal Employment Opportunity Commission.[3] Rhode Island Gen. Laws § 28-5-24.1(a), however, provides, in pertinent part, that the Commission "shall grant the right to sue within thirty (30) days after receipt of the request. <u>This shall terminate all proceedings before the commission</u> and shall give to the complainant the right to commence suit . . . ." Id. (emphasis added). If "the language [of a statute] is clear on its face, then the plain meaning of the statute must be given effect." <u>Gilbane Co. v. Poulas</u>, 576 A.2d 1195, 1196 (R.I. 1990). Section 28-5-24.1(a) provides that once the Commission grants a claimant the right to sue, all proceedings before the Commission terminate. R.I. Gen. Laws § 28-5-24.1(a). Once Plaintiff received his right to sue letter, his claim before the Commission was voluntarily terminated, therefore Plaintiff's claim was no longer before the Commission. <u>Moore v. Rhode Island Board of Governors for Higher Education</u>, 18 A.3d 541, 544 (R.I. 2011) (noting that the right to sue letter, "if granted, terminates all proceedings before the [C]ommission"). Plaintiff's argument fails.

C. <u>The Agreement Does Not Apply to Claims for Equitable Relief</u>

Plaintiff also argues that the Agreement excludes claims for injunctive or other equitable relief. Plaintiff seeks compensatory damages, back pay, punitive damages, attorney fees, costs, and "equitable relief prohibiting Defendants from engaging in further discriminatory practices. . . ." Amended Complaint at ¶¶ 11, 14, 17.

---

[3]Defendants do not dispute that the Commission is an agency that has concurrent jurisdiction with the Equal Employment Opportunity Commission.

8

The parties agree that Plaintiff has made claims for equitable relief. The Agreement provides: "Claims Not Covered: Claims covered by this Agreement do not include . . . [a] claim . . . for injunctive or other equitable relief . . . ." Exhibit A ¶ 1. Based on the plain language of the Agreement, it is clear that Plaintiff's claims for equitable relief are excluded from the arbitration provision.

Although it may seem "cumbersome" to require arbitration of legal claims but have the parties return to court for consideration of a request for equitable relief – the plain language of the Agreement indicates that that is what the parties intended. See Starnes v. Harrell Industries, Inc., C/A No. 0:13-01109-JFA-KDW, 2014 WL 104096, at *5 (D.S.C. Jan. 9, 2014); see generally Durfee v. Ocean State Steel, Inc., 636 A.2d 698, 703 (R.I. 1994) (noting that it "is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit"). The Agreement clearly provides that the question of liability and legal damages, if any, are questions that must be resolved by the arbitrator. After the arbitration is concluded, if necessary, Plaintiff may make an appropriate motion before this Court to resolve Plaintiff's claims for equitable relief.[4]

## IV. Conclusion

Defendant's motion is granted in part and denied in part. Defendant's motion to stay this matter and order Plaintiff to submit his claims to arbitration is granted, but only in so far as they relate to Plaintiff's legal remedies. Defendant's motion to dismiss the complaint is denied.

SO ORDERED

---

[4] The Court's ruling should not be construed by Plaintiff as allowing him two bites at the apple by permitting him to "relitigate the merits of his entire [lawsuit] in this court when seeking available equitable remedies." Starnes, 2014 WL 104096 at *5.

<u>/s/ Mary M. Lisi</u>
Mary M. Lisi
United States District Judge
January 26, 2015